**MICHAEL W. COTTER**
United States Attorney

**VICTORIA L. FRANCIS**
Assistant U.S. Attorney
U.S. Attorney's Office
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 657-6101
FAX: (406) 657-6058
E-mail: Victoria.Francis@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff and Counterdefendant, vs. **GEORGE KORNEC, PHILIP NAPPO, INTERMOUNTAIN MINING AND REFINING, LLC,** Defendants and Counterclaimants. | CV 15- 78 -H-CCL **UNITED STATES' BRIEF ON STANDARD OF REVIEW AND NO JURY TRIAL** |

Pursuant to this Court's Order dated November 16, 2015 (Dkt. 22), the United States sets forth below its brief on the legal issues of whether review is on the administrative record and whether Defendants are entitled to a jury trial.

## A.   Relief Requested by the Parties

### 1.   Relief requested by the United States

The United States filed its Complaint on August 11, 2015 seeking injunctive and declaratory relief.   (Dkt. 1 at 13-14).   The Complaint seeks to have the Defendants' actions declared to be illegal and in violation of the regulations governing the use of the surface of National Forest System lands subject to unpatented mining claims.   Specifically, the Defendants must have an approved Plan of Operations under 36 C.F.R. § 228.4 for any activity that occurred after their 2014 Plan of Operations expired.   Therefore, Defendants were in violation of the regulations because there was no approved Plan of Operations allowing them to construct a garage, cut trees, open a road, and reopen a collapsed adit on their unpatented mining claims.   (Dkt. 1, para. 11).   In addition, storage of unauthorized explosives was found on the site, which illustrates actions yet again taken by the Defendants without an approved Plan of Operations.   (Dkt. 1, para. 15,18).

The Forest Service issued a Notice of Noncompliance which provided the Defendants with administrative appeal rights.   (Dkt. 1, paras. 11-12).   The

Defendants filed an administrative appeal.  A final decision on the administrative appeal was issued by Forest Supervisor William Avey on December 3, 2014.  The parties resolved some of the claims, *i.e.*, those related to Defendants cutting trees outside of an approved Plan of Operations and reclamation of the unapproved road.  Unfortunately the claims related to removal of the unauthorized structure, and Defendants' unauthorized storage of explosives on the site remain unresolved. (Dkt. 1, paras. 12-13).

The Forest Service tried to get Defendants into compliance with the regulations through a new Plan of Operations submitted by the Defendants which would require analysis under the National Environmental Policy Act.  (Dkt. 1, para. 16).  However, Defendants refused to recognize or comply with the mining regulations, and instead they revoked their approval as to any prior plans of operation for their mining activities.  Defendants then proceeded to issue a Notice of No Trespass to the Forest Services, erect "No Trespassing signs," and threaten to have Forest Service personnel arrested for "trespassing" on the site of their unpatented mining claims located on National Forest Service lands.  (Dkt. 1, para. 17).  The Defendants' threats are in violation of 36 C.F.R. § 228.7 and 30 U.S.C. § 612.  Defendants have put locks on a Forest Service gate and barred access to the Forest Service and the public on the access road.  (Dkt. 1, para. 19).

Based on these actions the United States requests a judgment declaring Defendants' actions to be in violation of the regulations governing use of the surface of National Forest System lands for unpatented mining claims.   And the United States requests injunctive relief requiring the Defendants to remove the unauthorized structure and unauthorized explosives until a new Plan of Operations is approved, and preventing the Defendants from interfering with the Public or Forest Service access including requiring the Defendants to remove any "no trespassing" signs and locks from the site.   (Dkt. 1, prayer for relief at 13-14).   If the Defendants do not remove the unauthorized structure and explosives by a date set by the Court, and the United States is required to restore the surface property, the United States does seek reimbursement for restoration costs.   *Id.* at 13-14.

## 2. Defendants' Counterclaims

Defendants seek to file amended counterclaims in part under the Declaratory Judgment Act, 5 U.S.C. §§ 2201-2202, to declare the Defendants' property to be "private property" under the Mining Law of 1872, and for Federal and State constitutional relief.   (Dkt. 23-1, para. 2).   Defendants seek a declaration that their mining claims are not subject to Forest Service regulations.   (Dkt. 23-1, para. 4).   They also seek relief under the Administrative Procedures Act, 5 U.S.C. §§ 701-706.   (Dkt. 23-1, para. 5).

Defendants seek a declaratory judgment that they own mining claims to the "full extent provided for" by the Mining Law of 1872; a declaration that their mining claims are not subject to Forest Service regulations; an injunction preventing the Forest Service from interfering with their rights in the mining claim; and a declaratory judgment that the Forest Service actions are unlawful and should be set aside as arbitrary, capricious, or not in accordance with the law or Constitution; and a declaration that Defendants own private property and have a right to exclusive possession of the surface within their mining claims.   (Dkt. 23-1 at 42, paras. 2-7). Defendants also seek attorney fees and costs.

## B.  Statutory and Regulatory Framework

Some general discussion of the law and regulations applicable is helpful to the analysis of the claims and relief requested by the parties and therefore the issue of whether Defendants are entitled to a jury, and the standard of review.

### 1.  The Mining Law of 1872

The Mining Law of 1872, 30 U.S.C.§ § 22-42, (the "Mining Law") authorized citizens to stake or "locate" a valid mining claim by making a "discovery" of a valuable mineral deposit, and complying with all other applicable statutory or regulatory requirements.  *Chrisman v. Miller*, 197 U.S. 313, 320-21 (1905).  A validly located mining claim is "property within the fullest sense of that

term; and may be sold, transferred, mortgaged, and inherited." *Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306, 316 (1930).   However, legal title to federal lands underlying the mining claim belongs to the United States*, Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 575 (1987), unless and until the claimant obtains a "patent" to the mining claim by submitting a patent application and complying with the extensive list of requirements set forth in the Mining Law. 30 U.S.C. § 29; *see Freese v. United States*, 639 F.2d 754, 756 (Ct. Cl. 1981).   As the Ninth Circuit explained in *United States v. Shumway*, 199 F.3d 1093 (9th Cir. 1999), mining claimants submit patent applications to the Bureau of Land Management (BLM) at the Department of the Interior; this is true even for mining claims located on National Forest System lands.   *Id.* at 1099; *see also* 30 U.S.C. § 29, 43 U.S.C. § 2.   Until a patent is issued, however, the federal land management agencies retain regulatory authority over the lands that are subject to unpatented mining claims.   *Shumway*, 199 F.3d at 1102-03.

  Here Defendants <u>do</u> <u>not</u> have "patented" mining claims.   Defendants have not claimed to have "patented" mining claims.   Defendants have unpatented mining claims.   Properly located unpatented mining claims give the claimant the "right of possession and enjoyment of all the surface included within . . . [the] locations." 30 U.S.C. § 26; *Independence Mining Co. Inc. v. Babbitt*, 105 F.3d 502, 506 (9th Cir.

1997).   This right to develop and extract the minerals from Federal lands in which the valuable mineral deposits are found continues so long as the claimant complies with applicable regulations and satisfies certain "maintenance" requirements under the mining laws.  *See United States v. Locke*, 471 U.S. 84, 99-100 (1985); *Chambers v. Harrington*, 111 U.S. 350, 353 (1884).

The right to possess, occupy, and extract minerals from the Federal lands in which valuable mineral deposits are found, 30 U.S.C.§ 26, has always been subject to federal regulation, and to state, territorial, and local regulations not in conflict with federal law.  *See* 30 U.S.C.§ 22 (authorizing mining "under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States").  However, *Teller v. United States*, 113 F. 27, 281 (8th Cir. 1911) stated as follows:

> While his location so far segregated and withdrew the land from the public domain that no rival claimant could successfully initiate any right to it until his location was voided and his entry was cancelled . . . . It gave him nothing but the right of present and exclusive possession for the purpose of mining.  It did not divest the legal title of the United States, or impair its right to protect the land and its product by either civil or criminal proceedings, from trespass or waste.

Quoted with approval in *United States v. Nogueira,* 403 F.2d 816, 824 (9th Cir. 1968).

### 2. The Surface Resources Act of 1955

The Surface Resources Act of 1955 provided that unpatented mining claims could be used only for "prospecting, mining or processing operations and uses reasonably incident thereto." 30 U.S.C.§ 612(a). In addition, the Surface Resources Act provided that mining claimants may use vegetative resources (such as timber) and other surface resources (such as sand, gravel, or other mineral materials) on the mining claim only "to the extent required for . . . prospecting, mining or processing operations and uses reasonably incident thereto, or for the construction of buildings or structures . . . or to provide clearance for such operations or uses, or to the extent authorized by the United States . . . ." 30 U.S.C. § 612(c).

The restrictions in the Surface Resource Act on mining claimants' use of vegetative and surface resources were not new, but simply reflected existing law. Even before 1955, the court had long held that the Mining Law itself entitled the mining claimant to use the surface only for purposes reasonably incident to mining. *See e.g., United States v. Rizzinelli*, 182 F.675, 684 (D. Idaho 1910) ("The right of a locator of a mining claim to the 'enjoyment' of the surface thereof is limited to uses incident to mining operations . . . .").

The substantive change to the Mining Law effected by the Surface Resources Act was in subjecting unpatented mining claims located after its enactment to "the

right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof." 30 U.S.C. § 612(b). This change was significant because it departed from the plain language of the Mining Law which originally gave mining claimants the "exclusive right of possession and enjoyment" of their mining claims. 30 U.S.C. § 26.

Defendants in this case abandoned their pre-Surface Resource Act unpatented mining claims by operation of law, as determined by BLM in 1986, for failure to make the annual filing required by the Federal Land Policy and Management Act of 1976 (FLMPA), 43 U.S.C. § 1744. *See* Dkt. 1, Exh. A. BLM's decision declaring the mining claims void stated that Defendants could relocate the mining claims if there were no intervening rights and the land remained open to location under the Mining Law. (Dkt. 1, Exh. A at 3). They were also given notice of appeal rights. *Id.* at 3. Defendants did not appeal or contest the BLM decision, but instead located new mining claims on the same lands, which are the mining claims at issue in this lawsuit. The result of locating their current mining claims in 1986, however, is that their mining claims are subject to the Surface Resources Act, and Defendants no longer have the "exclusive right of possession and enjoyment" of the subject lands. The statute of limitations has long since passed for Defendants to challenge the BLM's 1986 decision. *See* 28 U.S.C. § 2401(a).

### 3. Mining on National Forest System Lands

The earliest forest reserves were withdrawn from entry under the Mining Law by presidential proclamation. However, in the Organic Administration Act of 1897, 30 Stat. 34-36 (June 4, 1897), which established the National Forest System, Congress opened existing and future forest reservations to the federal mining laws. In the Organic Administration Act, Congress authorized the management of the forest reserves and authorized regulation of all activities conducted on them.[1] *See* 16 U.S.C. § 551 (authorizing the Secretary to "insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction . . . ."). The Organic Act specifically provided that persons entering the forest reserves for the purposes of prospecting, locating, and developing mineral resources "*must comply with the rules and regulations covering such National Forests*." 16 U.S.C.§ 478 (emphasis added).

In 1974, the Secretary of Agriculture issued regulations governing the use of the surface of National Forest System lands in connection with operations conducted under the Mining Law. *See* 36 C.F.R. Part 228, Subpart A (formerly Part 252). The Forest Service regulations set forth the rules and procedures "through which use of the surface of National Forest System lands in connection with operations

---

[1] Authority over forest reserves, originally vested in the Secretary of the Interior, was transferred to the Secretary of Agriculture in 1905. 16 U.S.C. § 472.

authorized under the United States mining laws . . . shall be conducted so as to minimize adverse environmental impacts on National Forest System surface resources. . . ."  36 C.F.R. § 228.1.

Forest Service regulations provide that mining activities that the District Ranger determines are likely to cause a significant disturbance of surface resources are prohibited, absent an approved plan of operations.  36 C.F.R. § 228.4(a); 36 C.F.R. Part 261.  Forest Service regulations provide that the following activities on Forest Service lands are prohibited absent specific authorization:  constructing, placing, or maintaining any kind of road, trail, structure, fence, enclosure, communication equipment, or other improvement.  36 C.F.R. § 261.10(a); cutting, removing, or otherwise damaging any timber, tree, or other forest produce, except as authorized by Federal law, regulation, permit, contract, special use authorization, free-use authorization, or personal-use authorization.  36 C.F.R. § 261.6(a).

Persons aggrieved by a decision of the authorized Forest Service officer with respect to a plan of operations may file an appeal under the provisions of 36 C.F.R. § 214; 36 C.F.R. § 228.14.  Section 36 C.F.R. § 251.14(a)(4) also specifically provides that these appeal procedures apply to a written decision of Forest Service line officers related to issuance, denial, or administration of mining plans of operation under 36 C.F.R. Part 228, Subpart A.  Forest Service administrative

appeal regulations specifically require exhaustion of administrative remedies before a mining operator can seek judicial review of a Forest Service decision.  36 C.F.R. § 214.20.

**C.  Defendants Not Entitled to Jury Trial**

Defendants have incorrectly claimed that they are entitled to a trial by jury. The relief sought by both parties is an injunction.  An injunction is an equity action and therefore Rule 38, Fed. R. Civ. P. and the Seventh Amendment do not provide for a trial by jury.  *See United States v. State of Louisiana*, 339 U.S. 699, 706 (1950) (holding Louisiana not entitled to jury trial in an action for injunction as such action is an action in equity).  A request for specific performance is likewise an action in equity.  *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649 (7th Cir. 2002).  The fact that the parties request a declaratory judgment in connection with the injunctive relief does not alter the basic equitable nature of the issues in this case.  *See Manning v. United States*, 146 F.3d 808, 811-12 (10th Cir. 1998) (An injunction sought against the Forest Service in a mining rights claim is equitable in nature.).  "Seeking declaratory relief does not entitle one to a jury trial where the right to a jury trial does not otherwise exist."  *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 662 (6th Cir. 1996).

Defendants in their proposed amended counterclaims also seek declaratory relief as well as an injunction. However, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, is not an independent basis for jurisdiction for suit against the United States. The Declaratory Judgment Act does not extend subject matter jurisdiction in cases where the Court has no independent basis for jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Declaratory relief may only be awarded when other bases for jurisdiction are present. *Smith v. Grimm*, 534 F.2d 1346, 1349, n. 5 (9th Cir. 1976).

In this case Defendants assert the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.*, as a basis for jurisdiction for their request for declaratory relief and injunction. Because the APA does not provide a waiver of sovereign immunity for money damages, rather only relief "other than money damages," 5 U.S.C. § 702, it too is in the nature of an equitable action. It allows for "judicial" review of agency action which may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law[.]" 5 U.S.C. § 706(2)(A). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).

To the extent that Defendants may seek to assert jurisdiction for their counterclaims under 28 U.S.C. § 1331, section 1331 is not considered a waiver of sovereign immunity for suit against the United States. *See Hughes v. United States*, 953 F.2d 531, 539 (9th Cir. 1992); *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983).

Moreover, Defendants have not set forth any waiver of sovereign immunity that would subject the United States to Defendants Constitutional arguments based on the Montana Constitution.

Defendants, in their proposed amended counterclaim, also seek to have the Court declare that their unpatented mining claims are "private property" under the Mining Law and that they have the exclusive right to possession of the surface of their claims. It is undisputed that Defendants have not obtained or even filed an application to obtain a patent to their mining claims, which means that fee title to these land remains in the United States and, consequently, the lands are not "private property" as a matter of law. *See Granite Rock*, 480 U.S. at 575. It is also undisputed that Defendants' mining claims were located in 1986 long after the Surface Resources Act amended the Mining Law to change the surface rights in a valid claim from "exclusive" to non-exclusive. *See* 30 U.S.C. § 612(a); *McMaster v. United States*, 731 F.3d 881, 886 (9th Cir. 2013) (stating that mining claims

located after the enactment of the Surface Resources Act "would no longer receive the exclusive right of possession and enjoyment of the surface prior to patenting their claim"). Defendants cannot state a claim under either of these authorities and, consequently, jury trial is not appropriate.

Moreover, to the extent defendants believe that obtaining a declaration from this Court that they have "exclusive possession" of the surface of their mining claims, will exempt them from Forest Service regulation, they are wrong. The Forest Service has the authority to regulate all mining operations under the Mining Law, regardless of whether a mining claim has "surface rights." *See United States v. Langley*, 587 F.Supp. 1258, 1265-67 (E.D.Cal. 1984)(requiring a plan of operations for a pre-1955 mining claim on National Forest System lands and holding that "[t]here can be little doubt that the Forest Service regulations apply" to the defendant's "mining operations and to his residence").

Even assuming, *arguendo*, that private property is involved here, Defendants' claims regarding "private property" and "exclusive possession" of the surface appear to be in the nature of Quiet Title Act claims under 28 U.S.C. § 2409a since Defendants are, in essence, disputing title to real property in which the United States claims an interest. *McMaster*, 731 F.3d at 898 (stating that "the QTA is the exclusive means for challenging the United States' title to real property"). The

Quiet Title Act provides that any civil action to disputed title under the Quiet Title Act shall be tried by the court without a jury.  See 28 U.S.C. § 2409a(f).

Therefore, this case is not appropriate for a jury trial and the matter should be tried to the Court.

**D.  Standard of Review**

Defendants have asserted the APA as the only waiver of sovereign immunity for their claims that the Forest Service decision to require removal of the garage not authorized in any approved plan of operations, and requirement to remove locked gates, is arbitrary, capricious or otherwise in violation of the law.   The standard of review is a deferential standard under the APA and the court "cannot substitute its own judgment for that of the agency.  *See In Defense of Animals, Dreamcatcher Wild Horse and Burro Sanctuary v. U.S. Dept. of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014).   "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C.§ 706, to the agency decision based on the record the agency presents to the reviewing court."   *Florida Power Light Co.*, 470 U.S. at 743-44.

In determining whether the agency's decision violates the "arbitrary and capricious" standard set forth in the APA, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has

been a clear error in judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977).

When reviewing final agency action under the APA, the focal point for judicial review should be the "administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court." *Southwest Center for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Since judicial review is limited to the record before the agency, discovery is not generally necessary and should be prohibited. *See Florida Power & Light*, 470 U.S. at 744.

Defendants' attempt to litigate the BLM decision issued in 1986 is also subject to APA review. Defendants were given appeal rights in BLM's decision, including instructions on how to seek administrative review. *See* Dkt. 1, Exh. A at 3. Defendants did not exercise that right to review. Because they did not exercise their right to review, they failed to exhaust administrative remedies and the abandonment of any pre-Surface Resources Act rights is final and time-barred from further review by the statute of limitations in 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless

the complaint is file within six years after the right of action first accrues," or the Quiet Title Act statute of limitations under 2409a(g) which is 12 years, both of which have expired.

Regarding application of the law, the APA authorizes the court to "decide all relevant questions of law."  5 U.S.C. § 706.  Regarding the request for injunction and declaratory relief sought by the United States, or the Defendants, the claims are largely questions of law within the province of the Court.  To the extent that any question of fact may exist that is material to the legal determinations not encompassed within the APA claims, a hearing or trial may be necessary for the Court to make any necessary findings.

DATED this 21st day of December, 2015.

           MICHAEL W. COTTER
           United States Attorney


           /s/ Victoria L. Francis
           Assistant U.S. Attorney
           Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 3832 words, excluding the caption and certificates of service and compliance.

DATED this 21st day of December, 2015.

>    /s/ Victoria L. Francis
>    Assistant U.S. Attorney
>    Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2015, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| __1-3__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | U.S. Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk of Court

2. Joshua Campbell
   Jardine, Stephenson, Blewett & Weaver, P.C.
   300 Central Ave., Suite 700
   P.O. Box 2269
   Great Falls, MT 59406-2269
   (406) 727-5000
   Fax: (406) 761-4273
   jcampbell@jardinelaw.com

3. Fred Kelly Grant Ltd.
   249 Smith Avenue
   Nampa, ID 83651
   (208) 949-1061
   (406) 761-4273 (Fax)
   fkellygrant@gmail.com

/s/ Victoria L. Francis
Assistant U.S. Attorney
Attorney for Plaintiff