JOSHUA I. CAMPBELL
Jardine, Stephenson, Blewett & Weaver, P.C.
300 Central Avenue, Suite 700
P.O. Box 2269
Great Falls, MT  59403-2269
(406) 727-5000
(406) 761-4273 (Fax)
jcampbell@jardinelaw.com

FRED KELLY GRANT (admitted *pro hac vice*)
Fred Kelly Grant Ltd.
249 Smith Avenue
Nampa, ID  83651
(208) 949-1061
(406) 761-4273 (Fax)
fkellygrant@gmail.com

*Attorneys for Defendants George Kornec, Philip Nappo, and Intermountain Mining and Refining, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE KORNEC, PHILIP NAPPO, INTERMOUNTAIN MINING AND REFINING, LLC,<br><br>Defendants. | Cause No. CV-15-78-H-CCL<br><br><br>**DEFENDANTS' BRIEF ON STANDARD OF REVIEW AND JURY TRIAL** |

Come Now Defendants and Counterclaim Plaintiffs George Kornec, Philip Nappo, and Intermountain Mining and Refining, LLC (collectively "Defendants") and pursuant to this Court's Order dated November 16, 2016 (Dkt. 22), and submit this brief on the preliminary legal issues requested by the Court to wit:  1) the standard of review for the administrative record or whether discovery is permissible in this case and 2) whether Defendants are entitled to their right to a jury trial.

I.    **Introduction**.

This case involves a dispute between Plaintiff and Defendants regarding Defendants' unpatented mining claims located in the middle of the Helena National Forest near Lincoln, Montana.

Defendants carry on lawful activities working their mining claims as their vested private property interests.  In recent months and years, Defendants have received numerous threats and harassment from the United States Forest Service.

Defendants' mining claims relate back to lawful mining claims staked in 1924 in the Heddlestone Mining District.  Defendants contend that their mining claims are subject to the Mining Laws of 1866, 1870, and 1872.  Plaintiff contends that the mining claims are subject to Multiple Use Mining Act of 1955.

**II.    Relief Requested by Defendants.**

This is a case in which it is vital that the Court and parties recognize the base upon which the issues will be resolved is that of private property ownership of an unpatented mining claim.  In their discussion of the case leading up to the jury argument, the Forest Service presented detailed statements of the nature of the case.  Defendants are therefore compelled to respond to such statements.

Defendants following facts and conclusions are presented with the caveat that discovery has not yet taken place.   Defendants will be seeking discovery, as further discussed below, to demonstrate that the administrative record is arbitrary, capricious, and incorrect.

The Forest Service urges the Court to accept as fact that Defendants' claims are subject to regulations by the Federal Surface Resources Act of 1955 ("FSRA") and the Federal Land Policy and Management Act of 1976 ("FLPMA").  As a result, the Forest Service presents a slanted statement of Defendants' property interest in the sites covered by their claims. To subject them and their claims to the full array of regulations and provisions of the FSRA and FLPMA would denigrate their property rights.

The claims now owned by Defendants were staked under, and are now covered by, the terms of the Mining Laws of 1872.  30 U.S.C. § 20 *et seq.*  Once Defendants filed claims under those laws, their claims were exempt from restraints imposed by subsequently enacted federal laws. 30 U.S.C. § 20.

Within the terms of the Mining Laws of 1872, Defendants now own unpatented mining claim sites.   The issues here must be analyzed within the parameters of that ownership.  The nature of the unpatented claim provides Defendants with "the effect of a grant by the United States of the right of present and exclusive possession."  Wilbur v. United States ex rel. Kushnic, 280 U.S. 306, 50 S.Ct. 103 (1930).  The claim takes on the status of real estate and is so treated as realty owned by Defendants.  Id.; Bradford v. Morrison, 212 U.S. 389, 39 S.Ct. 349 (1909).  The Wilbur Court made it clear that such unpatented claim "is property in the fullest sense of the term; and may be sold, transferred, mortgaged, and inherited without infringing on any right or title of the United States.  The right of the owner is taxable by the state; and is 'real property' subject to the lien of a judgment recovered against the owner in a state or territorial court."  Wilbur, 280 U.S. at 316.  The Wilbur Court also made it clear that as long as a miner "complies with the provisions of the mining laws his possessory right, for all practical purposes of ownership, **is as good as though secured by patent**." Id., at 317 (emphasis

added).  The <u>Wilbur</u> conclusion is consistent with the position expressed in the Congressional Record of October 23, 2000:  "Federal rules and regulations cannot extinguish property which derives from state law."  The statement is relevant here because the Forest Service may argue that regulations stemming from post-claim statutory authority overcome the property characteristics of the claims.  Therefore, the case law and the provisions of statutory law prevent that, because both demonstrate that the mining claim, even unpatented, possesses all the elements of property—private property cannot be taken, even partially, without compensation pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

Additionally, in this case, the property interests are consistent with state law; thus can be said to "derive" from state law.  Specifically, the property nature of the claims and their identifiers are consistent with Montana law.  The Montana Supreme Court held:  "[b]y decision and by statute an unpatented mining claim is property out of which dower may be claimed".  <u>Clark v. Clark</u>, 126 Mont. 9, 242 P.2d 992, 994 (1953).  The concept of dower is so deeply rooted in property law as to make it apparent that the Court had no temerity in concluding the unpatented mining claim is property.  *See also* <u>State ex rel. Baker v. District Court</u>, 24 Mont. 330, 61 P. 882 (1900)("Neither the statutes nor the courts in this state recognize

any distinction between possessory rights to mining claims upon public lands, and real estate held under other titles. While recognizing the United States as the paramount proprietor, the legislature and the courts have always treated the claimant under a perfected location as the owner of the fee. Indeed, the location operates as a grant from the government; and the estate acquired under it is a vested right to the fee, which becomes absolute upon the performance of the required conditions. It can be lost only by abandonment, or by forfeiture and location by another. It is property, in every sense of that term, and except, in the particular just noted, it has all the attributes of real estate."); Cobban v. Meagher, 42 Mont. 399, 113 P. 290, 292 (1911)("The courts have declared [an unpatented mining claim] property **in the highest sense of that term** (emphasis supplied) which may be bought, sold, and conveyed, and which passes by descent.").

With the law of Montana being clear as to the inherent property nature of Defendants' mining claims, it is also patently clear that mere regulations by federal agencies cannot extinguish those rights.  Were the regulations relied on by the Forest Service to be allowed to fully restrict the claims, property interests would be extinguished.  Such is neither the intent nor the objective of the federal statutes. *See* Cong. Record, October 23, 2000.

Barring some action like abandonment, the property rights of Defendants cannot be simply disregarded.  Incidentally, the Forest Service raises abandonment by law, referring to the fact that BLM concluded abandonment from the fact that the renewal was postmarked December 31 rather than December 30, 1985.  Abandonment can only be made out by factual showings of intent to quit, and an action to put "quit" into play.  The Forest Service will not be able to prove abandonment.   It will be impossible to prove Defendants' intent to abandon because they had no such intent.

Furthermore, abandonment of a property right cannot be found without establishment of facts proving that the owner intended to abandon and then in fact did leave.   "Montana case law has consistently required two elements to prove abandonment: (1) nonuse of the appropriation, and (2) an intent to abandon." Elaine M. Hightower, A New Rule of Law for the Abandonment of Water Rights, 45 Mont. L. Review (Winter 1984).  "The court has repeatedly held that abandonment by the appropriator must be voluntary, and has applied the Bouvier's Law Dictionary definition of abandonment: 'Abandonment must be made by the owner, without being pressed by any duty, necessity, or utility to himself, but simply because he desires no longer to possess the thing.'"  Id.   "Intent to abandon, a question of fact, is the more difficult element to prove. Historically, the burden of

proof must be met by a preponderance of the evidence and has fallen upon the party attempting to prove the abandonment.  Id.

Abandonment being a question of fact, by the way, demonstrates the need for a jury trial to try the issue. Since a jury is needed for that element, it would ill behoove the system to try to separate out one issue from the combined issues as to existence of a property right.

Moreover, the Forest Service ignores the fact that even if the BLM had been correct in deciding there had been an abandonment, there was no need for Defendants to do anything but reassert their private property claim pursuant to the Mining Law of 1872.  *See* Belk v. Meagher, 104 U.S. 279, 283, 26 L. Ed. 735 (1881)("His rights after resumption were precisely what they would have been if no default [that is, no default in the doing of assessment labor] had occurred.") Resumption of work by the owner, unlike a relocation by him, is an act not in derogation, but in affirmance, of the original location; and thereby the claim is 'maintained' no less than it is by performance of the annual assessment labor. Such resumption does not restore a lost estate; it **preserves an existing estate**.)(emphasis added).

The United States Supreme Court further pointed out the peculiar nature of an unpatented mining claim: "To sum up as to the character of the right which is granted by the United States to a locator, we find: (1) That no written instrument is necessary to create it. Locating upon the land, and continuing yearly to do the work provided for by the statute, gives to and continues in the locator the right of possession as stated in the statute. (2) This right, conditional in its character, may be forfeited by the failure of the locator to do the necessary amount of work; or if, being one among several locators, he neglects to pay his share for the work which has been done by his co-owners, his right and interest in the claim may be forfeited to such co-owners under the provisions of the statute. (3) His interest in the claim may also be forfeited by his abandonment, with an intention to renounce his right of possession. It cannot be doubted that an actual abandonment of possession by a locator of a mining claim, such as would work an abandonment of any other easement, would terminate all the right of possession which the locator then had." Black v. Elkhorn Min. Co., 163 U.S. 445, 450, 16 S.Ct. 1101, 1103 (1896).

The Forest Service contends that Defendants' claims are subject to the regulations imposed by the Forest Service and the BLM on mining claims. However, the regulations mainly stem from statutes that were developed and passed from the 1950s to the present. So, they were created subsequent to the creation of

Defendants' property interest.  To impose restrictions on such claims would be the epitome of retroactive impact where constitutionality is at best hazy and where the regulations are constantly in danger of destructive litigation.

"Mining claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, located prior to May 10, 1872, shall be governed as to length along the vein or lode **by the customs, regulations, and laws in force at the date of their location**."  30 U.S.C. § 23 (emphasis added).  The emphasized language precludes the Forest Service from trying to impose on the claim-holders here either the Surface Act or FLPMA or any other Act passed subsequent to the Mining Law of 1872.

Finally, title 30 United States Code section 26 seals Defendants' argument:

> The locators of all mining locations made on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, where no adverse claim existed on the 10th day of May 1872 so long as they **comply with the laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title**, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of

10

their locations, so continued in their own direction that such planes
will intersect such exterior parts of such veins or ledges. Nothing in this
section shall authorize the locator or possessor of a vein or lode which
extends in its downward course beyond the vertical lines of his claim
to enter upon the surface of a claim owned or possessed by another.
(emphasis added).

No mention is made of federal "regulations"—only "State, territorial and local."

This structure is too deliberate and sharp to have been accidental. The intent of

Congress to distinguish between state and local rules and federal laws is consistent

with the manner in which the mining laws came into existence.

The Surface Resource Act of 1955 also excludes coverage over prior

established claims: "Nothing in this [Act] . . . shall be construed in any manner to

limit or restrict or to authorize the limitation or restriction of any existing rights of

any claimant under any valid mining claim heretofore located. . ." 30 U.S.C. § 615.

The exemption of claims filed or staked under the Mining Law of 1872 from

regulations subsequently developed fits comfortably within the actual history of

the development of the Mining Laws in the 1860s and 1870s. When Congress set

out to enact laws to govern mining which was so important to national defense, it

decided that the miners had put together in their Mining Districts laws that were

working. Rather than step into political debates, flare ups and just plain fights,

Congress adopted the laws that had been passed in several of the Mining Districts.

The result was the Mining Law of 1866, which got tweaked for the Mining Law of 1870, which got tweaked for the Mining Law of 1872.  That law was in existence when Defendants' claims were staked, and it is that law which governs the validity and impact of those claims today.

## III.     Defendants have a right to a jury trial.

"[W]here both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' That holding, of course, applies whether the trial judge chooses to characterize the legal issues presented as 'incidental' to equitable issues or not."  Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472-473, 82 S.Ct. 894, 897 (1962)(citing Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948 (1959)).  Stated a little more bluntly, "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."  Ross v. Bernhard, 396 U.S. 531, 537-538, 90 S.Ct. 733 (1970); see also Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001); Granite States Inc. Co. v. Smart Modular Technologies, Inc., 76 F.3d 1023, 1027 (1996).  "In

such a situation, if a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought."  Tull v. United States, 481 U.S. 412, 425, 107 S.Ct. 1831, 1839 (1987)(*quoting* Curtis v. Loether, 415 U.S. 189, 196, n. 11, 94 S.Ct., 1005, 1009 n. 11 (1974)).

The Ninth Circuit further expounds that:  "[E]xcept under most imperative circumstances a right to a jury trial on legal issues may not now be denied to a federal litigant . . . because the legal issues are 'incidental' to the equitable issues . . ."  DePinto v. Provident Sec. Life Ins. Co., 323 F.2d 826, 835-836 (9th Cir. 1963)(footnote omitted).

"[W]here there are issues common to both the equitable and legal claims, the 'legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims.'"  Danjaq LLC, 263 F.3d at 962; Granite States, 76 F.3d at 1027 (*both citing* Dollar Sys. v. Avcar Leasing Systems, 890 F.2d 165, 170 (9th Cir. 1989)).

"Whether a declaratory judgment actions entitles a party to a jury trial depends on the nature of the claim from which it arises [whether legal or equitable]."  Hynix Semiconductor Inc. v. Rambus, Inc., 527 F.Supp.2d 1084, 1103

(N.D. Cal. Nov. 4, 2007)(*citing* <u>Pacific Indem. Co. v. McDonald</u>, 107 F.2d 446, 448 (9th Cir. 1939)).

The Forest Service seeks damages against Defendants.  Complaint, Prayer for Relief, ¶ 4 (Dkt. 1).  This is a legal issue and therefore subject to a jury trial.  <u>City of Monterey v. Del Monte Dunes at Monterey</u>, 526 U.S. 687, 729-730, 119 S.Ct. 1624, 1648 (1999).  Defendants' affirmative defenses of unclean hands, comparative negligence, and failure to mitigate damages directly tie in with the Forest Service's claim and are therefore also subject to trial by jury.  Defendants' Amended Answer, p. 8-9 (Dkt. 12).  <u>Brown v. San Diego State Univ. Found.</u>, 2015 WL 454857, 2 (S.D. Cal. July 28, 2015).

The Forest Service further mentions that "Defendants in this case abandoned their pre-Surface Resource act unpatented mining claims by operation of law. . ." Forest Service Brief, p. 9 (Dkt. 27).  As discussed in length above, Defendants contend that the issue of abandonment is an issue of fact that should be addressed by a jury.

**IV.    Standard of Review on Administrative Record:  discovery is permissible**.

Several exceptions exist where the Court is justified in expanding the administrative record or permitting discovery.  These exceptions include:  "(1) if admission is necessary to determine whether the agency has considered all

14

relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2004)(internal marks and citations omitted). *See also* Animal Defense Council v. Hodel, 840 F.2d 1432, 1436-1437 (9th Cir. 1988)(*opinion further clarified in* Animal Defense Council v. Hodel, 867 F.2d 1244 (9th Cir. 1989)); National Wildlife Federation v. Burford Public Power Council v. Johnson, 674 F.2d 791, 793-795 (9th Cir. 1982).  The United States Supreme Court further expounded with regards to the exception of agency bad faith that "there must be a strong showing of bad faith or improper behavior before such inquiry may be made." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825 (1971)(*overruled on other grounds by* Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980 (1977)).

At present, the first two exceptions (the agency considering all relevant factors and the agency relying on documents not in the record) are not at issue. Defendants are, however, currently reviewing the agency record to see if these may become an issue and reserve the right to raise this as an issue in the future.

The third exception discusses supplementing the record to explain technical terms or complex subject matter.  Lands Council, 395 F.3d at 1030.  This case

involves complex arguments regarding mining laws, mining procedures, mining operations and safety in general and site specific, condition and health of the national forest system surrounding the mining claim, explosives and the safe storage of explosives, and Montana Department of Environmental Quality (DEQ) safety compliance.  Preliminary Pretrial Statement of Defendants, p. 12 (Dkt. 19). All of these areas are technical and complex subject matters.  The documents in the administrative record Defendants have reviewed show that there is essentially no details, explanation, or analysis regarding these areas and it is unlikely that the Forest Service's administrative record provides these details, explanation, or analysis.  As such, Defendants submit that expert testimony is not only appropriate but necessary to provide the Court with adequate background, understanding, and explanation regarding these technical and complex subject matters.

The fourth exception centers on the bad faith or improper behavior of the agency.  Lands Council, 395 F.3d at 1030; Citizens to Preserve Overton Park v. Volpe, 401 U.S. at 420, 91 S.Ct. at 825.  Examples of the Forest Service's bad faith and improper behavior are sewn throughout Defendants' Answer and Counterclaims including numerous threats from the Forest Service threatening: damage and destruction to Defendants' mining equipment and facilities related to said mining claims, destruction of facilities necessary to the lawful operation of Defendant's

mining claims, to block access to said mining claims, and to bring actions to try to terminate Defendants' right to work their mining claims.  *See e.g.* Defendants' Counterclaim, ¶¶ 1-3, 32-39, 52-63, 67, 75 (Dkt. 12).  *See also* Defendants' Amended Counterclaim (Pending Approval), ¶¶ 3-4, 40-46, 51, 60-71, 75 (Dkt. 23-1 and 26-1).  Additionally, the Forest Service has regularly harassed Defendants. Instances include:  a Forest Service agent crushing the end of a culvert, the Forest Service demanding cleanup and micromanaging the mining operations, the Forest Service requesting demands for operation changes not called for in the Defendants' mining operation, the Forest Service threatening to get a crew together to cut up Defendants' equipment and tearing down Defendants' buildings, the Forest Service failing to follow up on Defendants' complaints about the Forest Service's agents' actions, the Forest Service restricting Defendants' access to their mining claims, the Forest Service's demands regarding the powder magazine stored at the mining claims, the Forest Service's interference with Defendants' ongoing relationship with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF or ATFE), the Forest Service's interference with Defendants' relationship with the Bureau of Land Management (BLM), the Forest Service's failure to check or acknowledge official records regarding Defendants' licenses with the ATFE, the Forest Service's use of a bait and switch operation to lure Defendants away from the mining claims while

Forest Service agents visited the mining site without the presence or permission of Defendants, and the Forest Service's complaints about Defendants cutting live trees when in actuality only dead trees were cut for firewood and mining operations.  Id.  Therefore, discovery regarding these issues should be granted.

**V.     Conclusion.**

For the reasons set forth above, Defendants are entitled to a jury trial. Defendants should be granted the opportunity to expand the administrative record and conduct discovery on technical and complex subject matters involved in this case as well as to expound on the Forest Service's bad faith and improper conduct.

DATED January 25, 2016.

JARDINE, STEPHENSON, BLEWETT & WEAVER, P.C.

By:___/s/  Joshua I. Campbell_____
Attorneys for Defendants George Kornec, Philip Nappo, and Intermountain Mining and Refining, LLC

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), I hereby certify the foregoing document

meets the requirements contained in Local Rules 1.5 and 7 as follows:

1. Line Spacing:   Double Spaced (except where long quotation used)
2. Typeface:        Calibri, 14 point
3. Word Count:    3,914 (does not exceed 6,500 word limit and excludes
    caption, certificates of service and compliance)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2016, a copy of the foregoing document
was served on the following persons by the following means:

1, 2   CM/ECF
_____Hand Delivery
_____Mail
_____Overnight Delivery Service
_____Fax
_____E-Mail

/s/ Joshua I. Campbell

1.    Clerk, U.S. District Court

2.    Michael W. Cotter
      Victoria L. Francis
      U.S. Attorney's Office
      2601 Second Ave. North, Suite 3200
      Billings, MT  59101